IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JENNIFER JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:14-cv-03027-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Jennifer Johnson seeks review of the Administrative Law Judge's (ALJ) decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. For the following reasons, the ALJ's decision is affirmed.

**I.  Background**

**A.  Relevant Period**

In order to recover Social Security disability insurance (SSDI) benefits, Johnson must show that she is disabled prior to the expiration of her insurance. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). Therefore, the relevant time period is from November 1, 2002, Johnson's alleged onset date, until her date of last insured, March 31, 2010. *Tilley v. Astrue*, 580 F.3d 675, 675 (8th Cir. 2009). Medical records from outside the relevant time period may be probative of the claimant's condition, along with records from the relevant period. *Id.* at 680-81.

## B. Johnson's Medical History

The record does not contain any documentation of Johnson's medical status before 2005. In 2005 and 2006 Johnson visited her doctor multiple times to complain about her asthma, at one point reporting that she was using her rescue inhaler a dozen times per day. Tr. at 327-331. In 2008, Johnson visited her doctor five times for these same problems. During two of these visits, the doctor noted that Johnson suffered from bronchial breath sounds. Tr. at 317, 319. In January 2009, Johnson complained of intermittent, sudden, and severe asthma attacks. She reported losing consciousness during some of the attacks. Tr. at 310. In February, the doctor diagnosed Johnson with fatigue and asthma with acute exacerbation. Tr. at 304. In June 2009, Johnson's primary care physician noted her condition was "well controlled with treatment." Tr. at 298.

In June 2010, Johnson began seeking treatment for lower back pain. Tr. at 289. Johnson's physician prescribed Cymbalta and recommended exercise. Johnson saw her doctor again in November and December, reporting that Cymbalta was not working and that she was unable to walk distances due to her pain. In January 2011, Johnson saw Dr. Dorinda Faulkner for a Medicaid evaluation. In her evaluation, Johnson reported numbness in her legs, arms, and hands; shortness of breath; back pain; and intermittent inability to talk. Tr. at 255. Dr. Faulkner noted that Johnson appeared uncomfortable on the exam table and she moved slowly and stiffly. Tr. at 257. An x-ray taken during the examination disclosed probable lumbar degenerative disc disease and scoliosis. Tr. at 264. Dr. Faulkner concluded that Johnson was likely temporarily disabled and that she expected Johnson's incapacity to last three to five months. Tr. at 254.

2

Case 6:14-cv-03027-NKL   Document 13   Filed 11/05/14   Page 2 of 8

Throughout 2011, Johnson tried a number of prescription medications to manage her pain. After being prescribed Meloxicam in March, her pain improved, but by August she reported that her pain was again out of control. By October, Johnson reported having to use a cane if she needed to walk any distance.

In January 2012, Johnson began to see Dr. Theresa Sherard. Dr. Sherard noted that Johnson was anxious and in pain. She diagnosed Johnson with fibromyalgia and low back pain. In February, Dr. Sherard took an MRI of Johnson's lumbar spine. The MRI showed a posterior disc protrusion with evidence of an annular tear at L5-S1 causing bilateral foraminal narrowing and facet arthropathy, as well as bilateral foraminal narrowing secondary to a posterior broad-based disc bulge at L4-5. Tr. at 366-367. Dr. Sherard prescribed amitriptyline. Tr. at 386.

Johnson saw two doctors at the request of the ALJ. Dr. Charles Mauldin examined Johnson in May 2012. He assessed Johnson with complaints of pain with nonorganic signs. Tr. at 394. Dr. Stephen Williamson examined Johnson in June 2012 and noted that Johnson had difficulty squatting and rising, getting up and down from the exam table, and hopping on one foot. He diagnosed Johnson with refractive error, uncontrolled hypertension and fibromyalgia. Tr. at 408.

In June 2012, Dr. Sherard referred Johnson to Dr. David True due to her pain. Dr. True assessed Johnson with carpal tunnel syndrome, fibromyalgia, and lumbar and cervical spondylosis. He then recommended physical therapy, regular exercise, and that Johnson use wrist braces.

3

Johnson testified at her administrative hearing, stating that her back pain prevented her from working, sleeping, sitting or standing for long periods of time, and lifting more than ten pounds.  Johnson testified that she prepares meals for her family and helps with the chores around the house; she also homeschools her children.  Johnson's husband and father testified that her asthma and back problems have gotten progressively worse over the last twelve years.

The ALJ found that Johnson is not entitled to SSDI benefits because she retains the Residual Functional Capacity (RFC) to perform her past relevant work as a nurse assistant and certified medical technician.  Tr. at 22.  In reaching this conclusion, the ALJ found that Johnson suffered from a number of severe impairments, including lumbar degenerative disc disease with spondylosis, uncontrolled hypertension exacerbated by obesity, and fibromyalgia syndrome with chronic pain.  Tr. at 18.  He found that Johnson's asthma did not constitute a severe impairment as it was controlled by medication.  Relying primarily on the opinions of three consultative examiners, the ALJ concluded that Johnson's explanation of her disabilities was not credible.  The ALJ then denied Johnson benefits.

**II.     Standard**

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'"  *Mitchell v. Shalala*, 25 F.3d 712, 714

4

(8th Cir. 1994) (citations omitted).  Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Johnson contends that the ALJ erred in denying her SSDI benefits because (1) in determining Johnson's RFC the ALJ failed to consider the combination of her severe and non-severe impairments, did not properly weigh the medical opinions, and relied on two opinions outside the relevant period; and (2) the ALJ failed to failed to properly consider Johnson's testimony and assess her credibility.

In determining Johnson's RFC, the ALJ considered Johnson's medical records, Johnson's statements regarding her symptoms, her activities of daily living, and the opinions of consultative examining physicians including Drs. Mauldin, Williamson, and Faulkner.  The ALJ then concluded that Johnson retained the following RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) except she can lift 50 pounds frequently and 20 pounds continuously; carry 50 pounds occasionally and 20 pounds frequently; stand two hours continuously and six hours in an 8-hour workday; frequently balance, occasionally stoop and climb stairs and ramps, but never kneel, crouch, crawl or climb ladders and scaffolds.  She cannot read very small print or written instructions, and cannot tolerate unprotected exposure to heights, moving mechanical parts, operating motor vehicles, and more than moderate noise in an office setting.

Tr. at 20.  This RFC is consistent with Johnson's abilities in light of her severe impairments of lumbar degenerative disc disease with spondylosis, uncontrolled hypertension exacerbated by obesity, and fibromyalgia syndrome with chronic pain.  Tr. at 18.  According to both consultative examiners, these impairments only moderately

5

limited Johnson's mobility. *See Masterson v. Barnart*, 363 F.3d 731, 737 (8th Cir. 2004) (A Social Security claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations.").

Johnson contends that the ALJ's opinion gave too much weight to consulting physicians who rendered opinions after the relevant time period. However, the ALJ's conclusions are consistent with the record. The only doctors who rendered opinions regarding Johnson's abilities made their evaluations after the relevant period. These opinions were largely consistent with one another, with no doctor opining that Johnson could not work. Both consulting physicians opined that Johnson could perform medium work. The ALJ incorporated their conclusions into the RFC. For example, Dr. Williamson noted that Johnson's visual acuity was severely limited but could be resolved by eyeglasses, and the ALJ included in the RFC that Johnson could not read very small print or written instructions. The only opinion that suggests Johnson might have been temporarily disabled is Dr. Faulkner's opinion, which stated only that Johnson "may be temporarily functionally disabled from working" for a period of three to five months. No records from the relevant period suggest that Johnson was more limited than found by the ALJ.

Johnson more specifically argues the ALJ erred by failing to consider the records of treating physicians Drs. Sherard and True. However, neither of these physicians advised Johnson to stop work or remain sedentary, and Johnson was consistently encouraged to exercise, engage in physical therapy, stop smoking, and lose weight. The medical records all support the ALJ's RFC determination. *Moore v. Astrue*, 572 F.3d

6

520, 523 (8th Cir. 2009) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.").

In determining the RFC, the ALJ also considered Johnson's testimony regarding her severe impairments. Johnson's testimony was not deemed credible, as it was inconsistent with the doctors' opinions regarding the extent of her impairments and inconsistent with her activities of daily living. For example, Johnson went camping regularly, ran a small business making canvas tents, did laundry and cooked for her family, and homeschooled her children. These activities are inconsistent with Johnson's complaints of disabling pain. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Johnson next contends that the ALJ erred in not including her asthma as a severe impairment. The record contains substantial evidence to support the ALJ's conclusion that Johnson's asthma was not a severe impairment. As of June 2009, her asthma was well controlled by medication. Tr. at 298. Johnson never received aggressive treatment for her asthma and was never hospitalized for a respiratory disorder. No doctor ever opined that her asthma significantly impaired her functioning. The record also does not suggest that her mild asthma exacerbated her severe impairments as to necessitate further RFC limitations due to her asthma.

In the administrative hearing, the ALJ asked a vocational expert whether Johnson would be able to perform her past relevant work as a nurse assistant and certified medical technician with her assessed RFC. The vocational expert concluded that Johnson would be able to perform her past relevant work. "Where the claimant has the [RFC] to do

7

either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000).

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

                                           s/ Nanette K. Laughrey
                                           NANETTE K. LAUGHREY
                                           United States District Judge

Dated: November 5, 2014
Jefferson City, Missouri